837 A.2d 421 (2003)
364 N.J. Super. 534
REGIONAL CONSTRUCTION CORP., C & L Contracting Corp. and DItch Mill Construction, LLC, Plaintiffs-Respondents,
v.
Lawrence V. RAY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 2003.
Decided December 11, 2003.
*422 Edgar M. Whiting argued the cause for appellant (Cuyler Burk, LLP, attorneys; Mr. Whiting, of counsel and on the brief).
Flaster/Greenberg P.C., attorneys for respondents (Pasquale Guglietta, Esq., on the brief).
Before Judges SKILLMAN, WELLS[1] and FISHER.
The opinion of the court was delivered by FISHER, J.A.D.
Defendant Lawrence V. Ray (Ray) moved to have a default judgment vacated one month after its entry. His motion was granted on the condition that a bond be posted in an amount in excess of the judgment. Because such a condition was neither justified by the circumstances nor proportionate to any prejudice suffered by plaintiffs, we reverse and remand.
The complaint in this matter was filed by plaintiffs C & L Contracting Corp., Ditch Mill Construction Co., and Regional Construction Co. (plaintiffs) on April 22, 2002. Plaintiffs alleged that they performed work on Ray's home, and on another project for the benefit of Ray, and sought judgment for the amount allegedly due. When no responsive pleading was timely filed, plaintiffs requested the entry of default on July 10, 2002 and a default judgment was entered against Ray for $861,251 on August 15, 2002. On September 19, 2002, Ray moved to vacate the default judgment.
*423 In seeking relief, Ray submitted a certification describing his proposed defenses and the reasons why he did not file a timely responsive pleading. Ray described the relationship between he and non-party Dominick Caruso (Caruso), a principal of the plaintiffs, as well as his relationship to the plaintiffs themselves. Ray claimed he was misled by Caruso with regard to the financial condition of plaintiff C & L Contracting Corp. (C & L), resulting in Ray loaning money and purchasing an equity position in C & L in late 1998 or early 1999. As a result of this transaction, both Ray and Caruso held 35% interests in C & L, the other 30% being held by Michael LaPenna (LaPenna).
Ray claims that he executed an indemnification agreement for C & L's benefit as a result of his obtaining an interest in C & L and that he now faces potential liability because C & L allegedly defaulted on certain contracts, as demonstrated by the suit for damages brought by the surety against him, Caruso, LaPenna and the plaintiffs. Universal Bonding Co. v. C & L Construction Co., et al., Docket No. BER-L-4865-02 (the surety's action). Caruso and the plaintiffs asserted cross-claims against Ray in the surety's action and Ray also asserted cross-claims against C & L and Caruso. The cross-claims of Caruso and the plaintiffs in the surety's action allege that Ray diverted corporate funds and, as a result, sought contribution and indemnification. In response, Ray filed a cross-claim and third party complaint against the plaintiffs and Caruso, alleging fraud, misrepresentation, breach of contract and common law indemnification.
Ray's moving certification also referred to another pending suit wherein Commerce Bank, N.A. has sought to foreclose upon Caruso's property; Caruso filed a third party complaint against Ray, making allegations similar to those in his cross-claim in the surety's action. Commerce Bank, N.A. v. Caruso, Docket No. F-17778-01 (the foreclosure action).
In seeking relief from the default judgment in this action, Ray referred to these other suits and claimed that when he forwarded the summons and complaint to attorneys he had previously retained to represent him in the surety's action and the foreclosure action, he "assumed [his] interests were being protected through the filing of answers or by obtaining extensions of time to answer." Ray asserted that he was unaware he was not being protected and did not discover that a default judgment had been entered until he retained new counsel.
As for the existence of a meritorious defense, Ray contended that the claims are "baseless" and that
[t]here is no contract for any work performed by C & L at my home or at the LR Family Holdings property. Any work that was performed at those locations was in consideration for my having assisted the company by providing loan guarantees and collateral for C & L obligations. Further, such work was generally done at a time when it was necessary to keep the company's union workers employed during the downtimes on other projects. Finally, the work done was worth nowhere near the amount claimed in the Complaint, probably not one-tenth of that amount.
Ray also asserted that he has "significant indemnification and subrogation claims against C & L and Caruso" giving rise to "significant set-off rights."
The motion judge observed that, notwithstanding Ray's avowed belief that counsel would take appropriate action, Ray should bear responsibility for the failure to file a timely responsive pleading, citing Philippe v. Anderson, 227 N.J.Super. 251, 256, 546 A.2d 582 (Law Div.1988). However, *424 the motion judge also recognized the vast differences between these circumstances and Philippe. In Philippe, more than four years passed between the entry of default and the motion to vacate, strongly suggesting the lack of excusable neglect, whereas, in the present case, only one month elapsed. Because of the very brief time that plaintiffs possessed a default judgment, we discern from the motion judge's decision that he found Ray's neglect to be excusable.
The motion judge expressed no opinion as to Ray's claim to a meritorious defense, providing only a visceral reaction to "multiple litigation like this bouncing around in the various counties of the state," although it is not entirely clear whether the judge's consternation was with plaintiffs' or Ray's perceived conduct.[2]
The motion judge directed that the default judgment be vacated but on the condition that Ray "post a bond in the amount of a million dollars with the court to insure and protect [plaintiffs'] rights." While the decision does not indicate why the bond should have been in the amount of $1,000,000 when the default judgment was for $861,251, we assume the judge's intent was to have Ray bond the entire amount of the judgment plus an additional sum to cover any accruing interest during the life of the suit.
Ray soon thereafter submitted an answer and counterclaim, advised the motion judge of his inability to post the bond, and moved for reconsideration. The responsive pleading was rejected by the clerk's office with the notation: "THIS PAPER IS NON-CONFORMING ... Bond was not posted default judgment in effect." Ray's motion for reconsideration directed at the bonding condition was denied because, according to the motion judge, Ray had not alluded to any material fact or controlling precedent which he believed the judge had previously misapprehended or overlooked.
R. 4:50-1 allows for relief from orders or judgments in certain enumerated circumstances. It is well established that trial courts are to "view `the opening of default judgments ... with great liberality,' and should tolerate `every reasonable ground for indulgence ... to the end that a just result is reached.'" Mancini v. EDS, 132 N.J. 330, 334, 625 A.2d 484 (1993), quoting Marder v. Realty Constr. Co., 84 N.J.Super. 313, 319, 202 A.2d 175 (App.Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964). So guided, trial courts are to exercise their sound discretion and their decisions will not be disturbed absent an abuse of discretion. Court Inv. Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966).
We are satisfied from our review of the record that there were sufficient grounds for the vacating of the default judgment. Certainly, the existence of other lawsuits involving these parties and Ray's assumption that his counsel in the other actions was addressing this action seems reasonably sufficient to constitute excusable neglect when examined against the very short time period between the entry of default judgment and the motion to vacate. The crux of this appeal, however, centers on the motion judge's imposition of a condition upon the granting of relief. We agree with Ray that the motion judge mistakenly exercised his discretion in this regard.
R. 4:50-1 permits the granting of relief from judgments or orders "upon such *425 terms as are just." Little has been written about the application of this aspect of the rule, although it has been determined that "terms" may include a requirement that the defaulting party post a bond in the amount of the default judgment as a condition of vacatur. For example, in Davis v. DND/Fidoreo, Inc., 317 N.J.Super. 92, 100, 721 A.2d 312 (App.Div.1998) the failure to timely respond to a complaint was found inexcusable but the denial of relief was reversed because of the exceptional circumstances standard set forth in R. 4:50-1(f) and because of "the absence of evidence establishing willful disregard of the court's process." In light of the marginal nature of the grounds asserted in Davis, we remanded for a determination of whether such "extraordinary" or "unusual" circumstances were present as would warrant the providing of security as a condition for the vacating of the default judgment. Id. at 101-02, 721 A.2d 312. The court in John Reiner & Co., Inc. v. Dorsey Roofing Co., Inc., 187 N.J.Super. 51, 453 A.2d 570 (Law Div.1982) also held that the power to impose such a condition was appropriate in extraordinary circumstances.
The power has also been recognized to permit the lien of the judgment to remain in place, while still affording the defaulted party its day in court. Reilly v. Perehinys, 33 N.J.Super. 69, 76, 109 A.2d 449 (App.Div.1954); Boyd v. Williams, 70 N.J.L. 185, 185, 56 A. 135 (Sup.Ct.1903). As an alternative to the continuing presence of the judgment, it developed that the defaulting party was provided with the opportunity to give other security, in the form of a bond, as a substitute for the judgment. As we observed in Davis, "absent extraordinary circumstances, the posting of a bond has been viewed not as a plaintiff's right, but as a defendant's option if he preferred to have a default judgment vacated when a court had directed that the judgment stand as a lien." 317 N.J.Super. at 101, 721 A.2d 312.[3]
While recognizing the power to require the posting of a bond as a condition for the vacating of a default judgment, courts in other jurisdictions have emphasized, in interpreting rules similar to R. 4:50-1, that the invocation of this power should be rarely exercised:
We think it perfectly proper for a district court in an appropriate case to impose the condition to vacating a default judgment that the judgment holder not be deprived of any payment or security he has obtained as a result of the judgment. But it is difficult to imagine what set of circumstances would justify the imposition of a condition that the now disputed claim be made more secure than it was prior to the court's action.
[Wokan, supra, 485 F.2d at 1235.]
In Kirkwood v. Superior Court, 253 Cal.App.2d 198, 61 Cal.Rptr. 316, 318 (1967), for example, the court found the imposition of the bonding of a default judgment as a condition for its vacation to be "out of all proportion to whatever prejudice or expense" plaintiffs may have suffered, where the defendant attempted to file an answer only thirteen days late. See also Mairena v. Charlemagne, 102 A.D.2d 814, 476 N.Y.S.2d 384, 385 (1984); Pokrass v. All Sec., Inc., 1 Ohio App.3d 47, 439 N.E.2d 422, 424-25 (1980). On the other hand, bonding of all or part of a default judgment, *426 as a condition of its vacation, has been permitted where the delay in the proceedings was willful, coupled with proof that the defaulting parties had "contrived" to render any potential judgment unenforceable or uncollectible by, among other things, making fraudulent conveyances in the interim. Powerserve Intern., Inc. v. Lavi, 239 F.3d 508, 516 (2nd Cir.2001); see also Philips Med. Sys. Intern. B.V. v. Bruetman, 8 F.3d 600, 602-04 (7th Cir.1993). Bonding all or a substantial part of a judgment as a condition of vacatur has also been held appropriate in circumstances which would have permitted the denial of the motion to vacate. Burger Chef Sys. Inc. v. Servfast of Brockton, Inc., 393 Mass. 287, 471 N.E.2d 77, 79-80 (1984).
It is fair to conclude, from these out of state authorities, that the imposition of terms pursuant to R. 4:50-1, while discretionary, should be judged against the relative strength or weakness of the movant's application and will be sustained only when reasonably proportionate to the prejudice suffered by plaintiff. The power to impose terms is not to be used to punish or sanction the defaulting party. Instead, the power should be invoked when necessary to relieve the plaintiff of any attending prejudice. Where the only prejudice to plaintiff has been the expenditure of costs and attorneys' fees in the pursuit of the default judgment or in responding to the motion to vacate, then the exercise of discretion with respect to the imposition of terms should be limited accordingly. This is the type of term most appropriately imposed and most commonly utilized, as we have previously indicated. Davis, supra, 317 N.J.Super. at 102, 721 A.2d 312; see also Annotation, Conditioning the Setting Aside of Judgment or Grant of New Trial on Payment of Opposing Attorney's Fees, 21 A.L.R.2d 863 (1952). The federal courts have also taken the same approach in issuing relief pursuant to Federal Rule of Civil Procedure 60(b). See Annotation, Propriety of Conditions Imposed In Granting Relief From Judgment Under Rule of Civil Procedure 60(b), 3 A.L.R.Fed. 956 (1970); 10A Wright & Miller, Federal Practice and Procedure, § 2700; Thorpe v. Thorpe, 364 F.2d 692, 694 (D.C.Cir.1966).
The imposition of a bond as a condition for R. 4:50-1 relief requires extraordinary circumstances the same or similar to those found in Powerserve, supra, 239 F.3d at 516. We conclude that such a condition should not be imposed unless it can be shown that (a) the delay caused by defendant's dilatory conduct will jeopardize plaintiff's ability to ultimately obtain satisfaction of the judgment or will cause plaintiff to lose some priority as a judgment creditor and (b) it appears reasonably probable that plaintiff will ultimately obtain a judgment when the merits are considered. Even then, a court should consider the sufficiency of less drastic terms before conditioning the vacating of a default judgment upon the posting of a bond.
As a less burdensome alternative to requiring the posting of a bond, a court may permit the judgment to remain in place, while staying execution, pending a final resolution of the dispute. See Reilly, supra, 33 N.J.Super. at 76, 109 A.2d 449. While, in many cases, such a term could create less of a hardship than the posting of a bondthe expense of which can often be prohibitive and its availability often illusorypermitting the judgment to remain as a lien on property may also, at times, prove onerous. Such a term limits the extent to which a defaulting party may make use of his property and, thus, the imposition of such a condition should be imposed only when the judgment's continued *427 existence, when assessed against the prejudice caused to plaintiff, does not disproportionately burden the defendant. In addition, the imposition of such a term should be balanced against the strength or weakness of the legal and factual basis for the motion to vacate.
As a result, we conclude that the term which will ordinarily suffice to alleviate any prejudice to the plaintiff is the reimbursement of plaintiff's fees and expenses as a condition of vacating the default judgment. This is particularly true where the judgment has been in effect for only a brief period of time before the motion to vacate is filed. In that circumstance, a plaintiff's expectations regarding the legitimacy of the judgment and the court's interest in the finality of judgments are at their nadir. Accordingly, in most cases the only terms which are, in the words of R. 4:50-1, "just" are those which restore plaintiff to the status quo ante, namely the reimbursement of the fees and costs expended in seeking the default judgment and in opposing the motion to vacate.
We also emphasize that a court should make sufficient findings as to its imposition of terms, particularly when determining that an award of fees and costs is insufficient to alleviate the prejudice caused by a defaulting party's inaction.
In this case, there is an absence of circumstances justifying the imposition of a bonding requirement or allowing the continuation of the judgment as a lien. Plaintiffs have not demonstrated prejudice beyond the incurring of fees and expenses. Accordingly, we affirm the vacating of the default judgment, we reverse the requirement of a bond as a condition for that relief, and we remand for a consideration of whether and to what extent the vacating of the default judgment should be conditioned upon the payment of plaintiffs' fees and expenses in both seeking the default judgment and opposing the motion to vacate.
NOTES
[1] Judge Wells did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] That is, it is not clear from his oral opinion whether the motion judge was skeptical of the various similar claims asserted by plaintiffs in the other pending lawsuits or Ray's failure to attend to the present suit in light of the other pending lawsuits.
[3] The retention, pendente lite, of any satisfaction received on the default judgment has also been held as a valid condition and could stand as security for vacating a judgment in appropriate circumstances. McTague v. Pennsylvania & New England R.R. Co., 44 N.J.L. 62, 63 (Sup.Ct.1882); Wokan v. Alladin Int'l, Inc., 485 F.2d 1232, 1235 (3rd Cir.1973).