**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2598-17T1

CALVIN WILLIAMS, SR. and
MARY WILLIAMS, H/W,

      Plaintiffs-Respondents,

v.

LAW OFFICES OF CONRAD J.
BENEDETTO & ASSOCIATES AND
CONRAD J. BENEDETTO, ESQUIRE,

      Defendant-Appellant,

and

DANIEL MCCRACKEN, ESQUIRE, and
J. EDMUND BRYAK, ESQUIRE,

      Defendants-Respondents.

_____

> Submitted December 18, 2018 – Decided January 2, 2019
>
> Before Judges Rothstadt and Natali.
>
> On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1468-17.

Law Offices of Conrad J. Benedetto, appellant pro se (Conrad J. Benedetto, on the brief).

Respondents have not filed a brief.

PER CURIAM

Defendants, the Law Offices of Conrad J. Benedetto & Associates and Conrad Benedetto, Esq., appeal from the Law Division's November 3, 2017 and January 5, 2018 orders denying their motions to vacate a September 27, 2017 default judgment and from the court's February 9, 2018 order denying reconsideration. We reverse.

## I.

This attorney malpractice action stems from defendants' alleged negligent representation of plaintiffs Calvin and Mary Williams in a personal injury action in which plaintiffs sought damages for injuries sustained when Calvin[1] slipped and fell on snow and ice in the parking lot of the Embassy Suites hotel in Piscataway on February 4, 2011. According to plaintiffs, defendants' representation fell "outside acceptable professional . . . standards of practice" by failing to "adequately advise, protect and represent [their] interests which caused [the] complaint to be dismissed . . . ."

---

[1] We refer to plaintiff by his first name to avoid confusion.

In the underlying litigation, Calvin testified at his deposition that he checked into the Embassy Suites on February 2, 2011, and noticed the entire parking lot "completely covered with snow and ice" with "four to six inches or more" in the area where he parked. He stated that he complained about the condition of the lot when he checked into the hotel on February 2, 2011, and later to a housekeeping employee. Calvin testified that on February 4, 2011, after successfully navigating around a foot of snow, he attempted to enter his vehicle when he fell. He stated the condition of the parking lot on that day was similar to February 2, 2011, except the snow and ice had "hardened."

Benedetto asserts that Calvin's deposition testimony established that he voluntarily parked near a dangerous condition "thereby encountering it under his own peril and volition." Based on that testimony, along with his "very mild" injuries, Benedetto concluded that Calvin's conduct gave rise to the probability that his complaint would be dismissed due to his comparative negligence. He claims to have informed Calvin of the "strengths and weakness[es] of his case," after which Calvin "made the final decision on dismissal."

On March 30, 2017, plaintiffs filed this malpractice action. Defendants were served on or about April 18, 2017. After they failed to file a timely answer, plaintiffs' counsel promptly obtained entry of default on June 20, 2017.

3

At some point after being served with the complaint, Benedetto contacted his legal malpractice insurer. On July 17, 2017, his carrier assigned counsel under a reservation of rights, to represent the firm "in connection with Plaintiffs' Request to Enter Default." Despite the July 17, 2017 letter, assigned counsel did not file an answer nor move to vacate the entry of default.

Benedetto maintains that "shortly after September 1, 2017," he received notice from plaintiffs' counsel that the court had scheduled a proof hearing for September 27, 2017. He claims to have contacted his insurer who advised him "there was an issue with coverage" and defendants "would be [required] to represent [themselves] until the issue was resolved."

On September 27, 2017, no one appeared at the hearing on behalf of defendants, and the court entered default judgment against them.[2] On October 10, 2017, the court issued an "[o]rder on [p]roof [h]earing," in which it entered "[f]inal [j]udgment by way of [d]efault" against defendants and other parties "in the amount of $125,000, attorney's fees in the amount of $41,666.66, along with interest in the amount of $431.24 for a total [j]udgment of $167,097.90, plus costs of suit."

---

[2] A copy of the September 27, 2017 order was not included in the record. However, the February 9, 2018 order references September 27, 2017 as the date of the default judgment, as does defendants' Civil Case Information Statement.

On October 16, 2017, defendants filed a motion to vacate default and to permit the filing of an answer out of time after defendants failed to comply with plaintiffs' requests for post-judgment discovery. On October 26, 2017, plaintiffs' filed a cross-motion for attorney's fees. On November 2, 2017, the day before the scheduled oral argument, Benedetto requested an adjournment as he was scheduled to attend a deposition on November 3, 2017, that could not be rescheduled due to the presence of out-of-state counsel who was flying in solely for the deposition. Defendants also sought an adjournment to file opposition to plaintiffs' cross-motion. The court denied defendants' requests.

At the November 3, 2018 motion hearing, defendants failed to appear. The court denied defendants' motion and concluded that while defendants may have established excusable neglect, their opposition papers failed to address the issue of a meritorious defense. The court also denied plaintiffs' cross-motion without prejudice.

Defendants filed a second motion to vacate default on December 6, 2017. The court denied defendants' application on January 5, 2018, "[without] prejudice."[3] Plaintiffs' sought reconsideration of the court's January 5, 2018

---

[3] It is unclear from the record if the court conducted oral arguments with respect to the December 6, 2017 motion as we have not been provided a copy of a transcript of that proceeding.

A-2598-17T1

order on January 23, 2018. After considering oral arguments, the court denied defendants' motion in a February 9, 2018 order.

In its oral decision, the court expressed its understandable frustration with defendants' failure to appear at the scheduled proof hearing and for other dilatory and irregular conduct in the case, including their failure to respond to post-judgment discovery. Despite recognizing that the issue of plaintiffs' comparative negligence in the underlying action was "sufficient . . . to assert in terms of a meritorious defense," the court stated it was "going to go out on a limb" and based on Benedetto's "flagrant" conduct, deny the motion as it could not "justify vacating the default judgment."

The court's February 9, 2018 order also required defendants to comply with plaintiffs' outstanding post-judgment discovery and amended the court's September 27, 2017 judgment to include an "additional sum of $7,500 predicated on defendants' conduct concerning post[-]judgment applications and noncompliance with the court's prior mandates and orders."[4] The court also

---

[4] On appeal, defendants' brief does not address any portion of the February 9, 2018 order other than the court's refusal to vacate the September 27, 2017 default judgment. Accordingly, we consider any objections to the other provisions of that order waived. See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

6

denied defendants' request to stay the relief in the February 9, 2018 order. We denied defendants' February 14, 2018 interlocutory application to stay the February 9, 2018 order on March 13, 2018. This appeal followed.

II.

Defendants argue that default judgment should have been vacated pursuant to Rule 4:50-1. That Rule establishes six alternative grounds for relief from a final judgment, whether obtained by default or after trial.[5] We focus on Rule 4:50-1(a), as defendants claim their failure to answer the complaint was excusable under the circumstances and was accompanied by a meritorious defense.

A motion to vacate under Rule 4:50-1(a) must be brought "within a reasonable time" but not later than one year after judgment. R. 4:50-2. Although not expressly included in the Rule, it is well-settled that a defendant claiming

---

[5] The six grounds listed in Rule 4:50-1 are: "(a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order."

excusable neglect must also demonstrate a meritorious defense. <u>Marder v. Realty Constr. Co.</u>, 84 N.J. Super. 313, 318 (App. Div. 1964).

The decision whether to grant a motion to vacate a default judgment is "left to the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion." <u>Mancini v. Eds ex rel. N.J. Auto. Full Ins. Underwriting Ass'n</u>, 132 N.J. 330, 334 (1993). "The rule is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." <u>Manning Eng'g, Inc. v. Hudson County Park Comm'n</u>, 74 N.J. 113, 120 (1977).

"A court should view 'the opening of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" <u>Mancini</u>, 132 N.J. at 334 (alterations in original) (quoting <u>Marder</u>, 84 N.J. Super. at 319, <u>aff'd</u>, 43 N.J. 508 (1964)). "All doubts . . . , should be resolved in favor of the parties seeking relief." <u>Ibid.</u> That is so because of the importance we attach to securing a decision on the merits. <u>Davis v. DND/Fidoreo, Inc.</u>, 317 N.J. Super. 92, 100–01 (App. Div. 1998).

Our courts have also recognized that a defendant's promptness in moving to vacate a default judgment is a factor that supports granting the motion. <u>Reg'l</u>

Constr. Corp. v. Ray, 364 N.J. Super. 534, 541 (App. Div. 2003) (affirming a finding of excusable neglect "when examined against the very short time period between the entry of default judgment and the motion to vacate"); Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 428 (App. Div. 2003) (noting the "speed and diligence with which A & P moved to attempt to vacate the default judgment"). "[W]here the judgment has been in effect for only a brief period of time before the motion to vacate is filed[,] . . . a plaintiff's expectations regarding the legitimacy of the judgment and the court's interest in the finality of judgments are at their nadir." Reg'l Constr. Corp., 364 N.J. Super. at 545.

Prejudice to the plaintiff if default judgment is vacated is also a relevant consideration. In this regard, Rule 4:50-1 permits the court to condition an order vacating default judgment "upon such terms as are just." Rule 4:50-1. Any relief granted under this provision of the Rule must be "reasonably proportionate to the prejudice suffered by plaintiff." Reg'l Constr. Corp., 364 N.J. Super. at 543. A court may compel a party seeking to vacate default to reimburse the judgment holder for the fees and costs "in the pursuit of the default judgment or in responding to the motion to vacate." Ibid.

As noted, a party must establish a meritorious defense as it makes no sense to set aside a default judgment if the ultimate result will inevitably be the same.

See Shulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953) (requiring the showing of a meritorious defense so "[t]he time of the courts, counsel and litigants [is] not . . . taken up by . . . a futile proceeding"). A court is required to "examine defendant's proposed defense to determine its merit." Bank of New Jersey v. Pulini, 194 N.J. Super. 163, 166 (App. Div. 1984). Although the bald denial of a plaintiff's complaint is usually insufficient to demonstrate that a meritorious defense exists, a party need not prove a likelihood of prevailing on the merits. 10 James W. Moore et al., Moore's Federal Practice - Civil ¶ 55.70[2] (3d ed. 2011).

III.

Guided by these principles, we conclude the trial court mistakenly exercised its discretion in denying defendants' motion to vacate the default judgment. We find that defendants presented evidence of an acceptable excuse for their failure initially to answer the complaint. It was undisputed that defendants were advised by their insurer that counsel was appointed to address, at a minimum, the motion to vacate the June 20, 2017 entry of default. Defendants' represented to the court that it was not until September 2017 that they were advised their insurer would not be defending the law firm.

A-2598-17T1

Defendants moved to vacate the entry immediately thereafter, and while the initial application did not alert the court that defendants had a meritorious defense, defendants' later motion, filed shortly after the default judgment and proof hearing, squarely placed before the court the issue of plaintiffs' comparative negligence. As the court itself acknowledged, defendants' comparative negligence defense was meritorious, at least for purposes of a Rule 4:50-1 analysis.

To sustain a cause of action for legal malpractice, a plaintiff must establish: (1) an attorney-client relationship creating a duty of care, (2) the breach of that duty, and (3) the breach was the proximate cause of the damages sustained by the plaintiff. Jerista v. Murray, 185 N.J. 175, 190-91 (2005). "The most common way to prove the harm inflicted by [legal] malpractice is to proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." Garcia v. Kozlov, Seaton, Romanini, & Brooks, P.C., 179 N.J. 343, 358 (2004). "The 'suit within a suit' approach aims to clarify what would have taken place but for the attorney's malpractice." Ibid. (citing Gautam v. De Luca, 215 N.J. Super. 388, 397 (App. Div. 1987)). "At such a trial, 'plaintiff has the burden of proving by a preponderance of the evidence that (1) he would have recovered a judgment

A-2598-17T1

in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectability of such judgment.'" Ibid. (quoting Hoppe v. Ranzini, 158 N.J. Super. 158, 165 (App. Div. 1978)).

Here, plaintiffs must show they would have succeeded in the underlying negligence action against Embassy Suites but for the defendants' negligent handling of their case. To establish negligence against Embassy Suites, plaintiffs had to prove: (1) a duty of care, (2) breach of that duty, (3) proximate cause, and (4) actual damages. Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008).

Under New Jersey's Comparative Negligence Law, plaintiffs' recovery would be barred if Calvin was found to be more than fifty percent at fault for his injuries. See Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 109 (2004); N.J.S.A. 2A:15-5.1 to -5.8. Thus, even if defendants were negligent in the prosecution of the underlying action, plaintiffs must establish they would have "recovered a judgment in the action against the [property owner]." Hoppe, 158 N.J. Super. at 165. Based on Calvin's deposition testimony, his comparative fault for the accident could be greater than 50%, thereby barring any recovery.

Finally, nothing in the record indicates that plaintiffs suffered extraordinary prejudice or detrimental reliance on the default judgment. To the extent plaintiffs were prejudiced, any harm appears to have been addressed by

12

the court when it correctly awarded plaintiffs' counsel attorneys' fees, representing the costs incurred for defendants' "conduct concerning post[-]judgment applications and noncompliance with the court's prior mandates and orders."

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2598-17T1