**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3296-19

MILL RD. LLC,

     Plaintiff-Respondent,

v.

SCHEDULE 1 LOT 8 BLOCK 320
ASSESSED TO ANAMAR
HOLDINGS LLC,

     Defendant.

_____

GEM REAL ESTATE
SOLUTIONS, LLC,

     Appellant.

_____

        Argued September 29, 2021 – Decided January 25, 2022

        Before Judges Fuentes, Gilson, and Gummer.

        On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-011460-19.

Crew Schielke argued the cause for appellant (Law Offices of Crew Schielke, LLC, attorneys; Crew Schielke and Mark Faro, on the briefs).

Elliott J. Almanza argued the cause for respondent (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Keith A. Bonchi, of counsel and on the brief; Elliot J. Almanza, on the brief).

PER CURIAM

In this tax-foreclosure case, defendant GEM Real Estate Solutions, LLC (GEM) appeals from a February 21, 2020 order denying its motion to intervene and vacate a November 6, 2019 final judgment pursuant to Rule 4:50-1. Because the final judgment was reached in an expedited procedure predicated on a procedurally-flawed determination that the property at issue had been abandoned and because of other anomalies, we reverse the February 21, 2020 order and vacate the November 6, 2019 final judgment.

I.

We glean from the motion record the following facts, which appear to be largely undisputed.

A.

The property at issue contains a two-family dwelling and is located at 7 Krotik Place in Irvington Township. It was once owned by Rozelle Williams, Jr. and was the subject of a foreclosure action brought by Finance of America

Reverse LLC against Williams in 2014. See Fin. of Am. Reverse LLC v. Williams, No. F-002421-14 (Ch. Div. June 26, 2018). Final judgment in that foreclosure action was issued on June 26, 2018. A deed issued during the pendency of the foreclosure action indicates Williams transferred ownership of the property to Anamar Holdings LLC (Anamar) in exchange for a $20,000 payment. That deed was dated November 16, 2017, and recorded on May 15, 2018.

As a result of the final judgment in the 2014 foreclosure action, the property was listed at a December 4, 2018 sheriff's sale. Offering $116,000, 7 Krotik Place, LLC (the LLC) was the successful bidder. The sheriff issued the deed to the LLC on February 7, 2019. The LLC recorded the deed with the county clerk on February 14, 2019.

## B.

After and unrelated to the December 4, 2018 sheriff's sale in the foreclosure matter, a "public sale of lands for delinquent municipal liens" in Irvington took place on December 27, 2018. Irvington then held a tax sale certificate regarding the property. According to the certificate, the unpaid municipal liens consisted of $359.92 in unpaid 2018 sewer charges assessed to Anamar. With $23.67 in interest and $65.00 for the cost of sale, the total amount

A-3296-19

of the sale was $448.59. The certificate was notarized on January 7, 2019, but not recorded until April 10, 2019.

C.

According to a deed dated February 22, 2019, GEM acquired the property from the LLC for $161,000. GEM and the LLC have the same address. Before GEM purchased the property, Majestic Title Agency, LLC (Majestic) conducted a title search on GEM's behalf. In title-search documents with a November 18, 2018 commitment date, Majestic identified two certificates of sale for unpaid municipal liens, one recorded on June 9, 2008, and the other recorded on March 16, 2016. Another document, which indicates its contents are "accurate according to the town records dating 12/6/2018," contains the following information under the heading "LIENS": "NONE – TAX SALE SCHEDULED FOR 12/20/2018; POSSIBLE ADDITIONAL COSTS, IF UNPAID; CONTACT TAX OFFICE." Under the heading "SEWER ACCOUNT #," the following information is provided: "14005600-0 2018: $359.92 OPEN + PENALTY; $0.08 PAID." A continuation title-search document, with a January 23, 2019 commitment date, states the 2008 and 2016 certificates had been redeemed. It makes no reference to the scheduled tax sale or the 2018 sewer charges.

A-3296-19

According to Majestic employee Corinne Scala, she called Irvington's tax office at or around the time of the closing to "inquire about any unpaid property taxes and/or water/sewer charges." A tax office representative told her the only open charge was a $360 sewer charge due on March 1, 2019. At the closing, Majestic collected $360 to pay that sewer charge. Scala later confirmed with a tax office representative that the tax office had received and accepted that payment on February 26, 2019.

GEM recorded the deed and the mortgage it had obtained regarding the property with the county clerk on March 25, 2019. On that same day, the LLC applied for a construction permit for electrical and plumbing work on the property. Irvington issued the permit on April 30, 2019. On May 13, 2019, the LLC applied for a construction permit for fire-protection work on the property. Irvington issued that permit on May 24, 2019. According to GEM shareholder Jutta Sayles, GEM has invested over $74,000 in renovations on the property, which it began sometime between March 25, 2019, and May 20, 2019.

D.

On March 1, 2019, Irvington addressed and attempted to send by certified mail to Anamar a notice that the property had "been determined to be Abandoned Properties" pursuant to the Abandoned Properties Rehabilitation Act, N.J.S.A.

55:19-78 to -107.  The notice stated, "[u]pon the determination that the property is abandoned, the township intends to either sell or transfer the tax lien(s) attached to the property at a special tax sale to a purchaser who intends to foreclose on its tax sale certificate pursuant to the accelerated provisions of the Tax Sale Law."  The notice also advised "an owner" had a right to "challenge the inclusion of a property on the abandoned property list" and a right to a hearing and provided information regarding the procedure that had to be followed for that challenge.

Pursuant to N.J.S.A. 55:19-55(d)(1), Irvington was required to send a notice to "the owner of record."  Irvington addressed its notice to Anamar even though, based on the latest recorded deed, the LLC was the owner of the property.  The notice Irvington attempted to send by certified mail to Anamar was returned on March 27, 2019, as "unclaimed, unable to forward."

Pursuant to N.J.S.A. 55:19-55(d)(1), Irvington also was required to publish the abandoned property list, "setting forth the owner of record."  Irvington had published in the March 7, 2019 issue of the Irvington Herald a list of the properties it had deemed abandoned.  The list included the property but identified Anamar as the owner, even though the latest recorded deed showed the LLC as the owner of the property.

A-3296-19

On May 20, 2019, Genia C. Philip, Irvington's abandoned property public officer, signed an "abandoned property certification." She identified Anamar as the "last registered owner" of the property, even though by then Irvington had issued building permits regarding the property to the LLC and, according to the most recently recorded deed, GEM was the owner of the property. According to her certification, the property had been deemed abandoned because it had not been "legally occupied" within the last six months before the date of the certification and because one installment of property tax was unpaid, the property was a nuisance pursuant to N.J.S.A. 55:19-82, and the property needed rehabilitation. Even though Irvington had issued building permits within the last two months, she certified the property had not received rehabilitation in the past six months. In support of GEM's motion, GEM shareholder Sayles certified that at the time Philip issued the certification, "not only had permits been issued but work had commenced on the renovation." It isn't clear when Philip signed the certification. Although Philip's signature was dated May 20, 2019, the notary stated the certification was "sworn to and subscribed" before her on May 31, 2019.

E.

According to a Special Tax Sale Assignment of Tax Sale Certificate dated May 21, 2019, before Philip's signature on the abandoned property certification was notarized, plaintiff Mill Rd., LLC purchased an assignment of Irvington's tax sale certificate regarding the property for $65,000 and recorded it on June 24, 2019. The signatures on the assignment were notarized on May 30, 2019. The assignment stated it was made pursuant to N.J.S.A. 55:19-101, which permits municipalities to hold "special tax sales with respect to those properties eligible for tax sale pursuant to [N.J.S.A.] 54:5-19 which are also on an abandoned property list established by the municipality."

The same day it recorded the assignment, plaintiff filed a "Complaint in Rem," seeking to foreclose the tax sale certificate. In opposition to GEM's Rule 4:50-1 motion, Michael Pellegrino, the attorney who filed the complaint on behalf of plaintiff, certified that plaintiff had brought its foreclosure matter pursuant to N.J.S.A. 54:5-86(b), asserting the property was abandoned. Generally, a private tax lienholder must wait two years from the date the certificate is sold to file a foreclosure complaint. See N.J.S.A. 54:5-86(a). Subsection (b) provides an exception for abandoned properties from that two-year requirement:

Any person holding a tax sale certificate on a property that meets the definition of abandoned property as set forth in [N.J.S.A.] 55:19-78 [to -107], either at the time of the tax sale or thereafter, may at any time file an action with the Superior Court . . . demanding that the right of redemption on such property be barred pursuant to the "tax sale law," [N.J.S.A.] 54:5-1 [to -137], or the In Rem Tax Foreclosure Act (1948) [N.J.S.A.] 54:5-104.29 [to -104.75].

[N.J.S.A. 54:5-86(b).]

N.J.S.A. 54:5-86(b) requires a plaintiff asserting the right to evade the two-year requirement based on the purported abandoned status of the property at issue to include a "certification by the public officer or the tax collector" that the property is abandoned pursuant to N.J.S.A. 55:19-83(d).

To support its assertion the property was "abandoned," plaintiff attached to the complaint the May 20, 2019 abandoned property certification. In the complaint, plaintiff identified GEM as the property's titleholder, referencing the February 22, 2019 deed recorded on March 25, 2019. Thus, plaintiff knew when it filed its complaint GEM was owner of the property as of February 22, 2019. Nevertheless, in support of its assertion that the property was abandoned, plaintiff attached the May 20, 2019 abandoned property certification, which inaccurately identified Anamar, not GEM, as the "last registered owner" of the property.

Plaintiff served a copy of the complaint on GEM's registered agent on June 27, 2019. GEM did not file an answer. Instead, it sent a check dated July 16, 2019, in the amount of $448.50, the face value of the tax certificate, to plaintiff's attorney, Pelligrino. Pelligrino returned the check with a note, informing defendant, "You must pay the tax collector directly. Do not send payment to my office." GEM apparently did not pay the tax collector. On October 9, 2019, plaintiff requested entry of final judgment. With no answer having been filed, the trial court entered final judgment pursuant to Rule 4:64-7(g) in favor of plaintiff on November 6, 2019. The final judgment barred any right of redemption in the property.

The entire foreclosure action was disposed of in less than five months from its filing and in less than a year from the issuance of the tax sale certificate.

F.

After learning about this litigation from GEM's legal counsel, Majestic employee Scala contacted a representative of Irvington's tax office. That representative advised Scala for the first time that Irvington had placed a lien on the property for 2018 sewer charges on December 27, 2018, and that a tax sale certificate dated January 7, 2019, in the amount of $448.59 was sold and not recorded until April 10, 2019. The tax office representative had no explanation

for the four-month delay in the recording of the tax sale certificate. According to Scala, the representative confirmed Scala had been misinformed previously about the sewer charges, agreed she should have been told the outstanding amount due, and conceded Irvington should not have accepted the payment for the 2019 sewer charges until the lien for the 2018 sewer charges were paid in full.

On November 22, 2019, GEM filed a complaint seeking to quiet title to the property. See GEM Real Est. Sols., LLC v. Mill Rd., LLC, No. ESX-C-0223-19 (Ch. Div. Nov. 22, 2019). In plaintiff's foreclosure action, GEM moved to intervene; to vacate the November 6, 2019 final judgment pursuant to Rule 4:50-1(a), (c), and (f); to consolidate GEM's quiet-title action with plaintiff's foreclosure action; and to permit GEM to redeem and avoid a forfeiture. GEM argued, among other things, plaintiff had foreclosed on the property in an expedited manner based on the property's purported abandoned status, even though plaintiff knew or should have known the property recently was sold at a sheriff's sale and subsequently purchased by GEM. GEM asserted the "expedited nature of the foreclosure action deprived GEM of any meaningful opportunity to defend itself or to pay the redemption amount of the Lien."

After hearing oral argument on February 21, 2020, the motion judge denied GEM's motion, stating her decision on the record and issuing a written order. The motion judge held no "mistake, inadvertence surprise, or excusable neglect" existed that warranted setting aside the final judgment Rule 4:50-1(a). The motion judge acknowledged GEM "may not have . . . been given the full information from the township" but faulted GEM for failing to take advantage of the "various procedures available to it," including "request[ing] an official tax search." The motion judge held that because GEM "had within [its] hands the ability to correct the mistakes," she could not "find that this is an honest mistake on the part of" GEM. The motion judge found GEM had not met the Rule 4:50-1(f) standards because "[t]here was nothing extraordinary about this situation." As for GEM's argument about the flawed abandonment-determination procedure, the motion judge found Irvington had not "acted in any improper manner," even though Irvington had failed to notice, by mail or publication, the property's "owner of record" and Irvington's abandoned property public officer had certified incorrectly that Anamar was the "last registered owner" of the property on the abandonment certification.

This appeal followed.

II.

"A motion to vacate default judgment implicates two oft-competing goals: resolving disputes on the merits, and providing finality and stability to judgments." BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 123 (App. Div. 2021). It is well established that trial courts are to "view 'the opening of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" Mancini v. EDS, 132 N.J. 330, 334 (1993) (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div.), aff'd, 43 N.J. 508 (1964)). "Although the movant bears the burden of demonstrating a right to relief, . . . a court should resolve '[a]ll doubts . . . in favor of the part[y] seeking relief.'" BV001 REO Blocker, LLC, 467 N.J. Super. at 123-24 (quoting Mancini, 132 N.J at 334). In deciding whether to vacate a default judgment, a court "should be guided by equitable principles," Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994), which support the "notion that courts should have the authority to avoid an unjust result in any given case," Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J 113, 130 (1977).

"So guided, trial courts are to exercise their sound discretion and their decisions will not be disturbed absent an abuse of discretion." Reg'l Constr.

Corp. v. Ray, 364 N.J. Super. 534, 541 (App. Div. 2003). An abuse of discretion occurs when a court's decision "'rest[s] on an impermissible basis,' 'was based upon a consideration of irrelevant or inappropriate factors,' 'fail[ed] to take into consideration all relevant factors and whe[ther] [the] decision reflects a clear error in judgment.'" State v. S.N., 231 N.J. 497, 515-16 (2018) (alterations in the original) (quoting State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017)). In addition, "a trial court mistakenly exercises its discretion when it 'fail[s] to give appropriate deference to the principles' governing the motion." BV001 REO Blocker, LLC, 467 N.J. Super. at 124 (alteration in original) (quoting Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 100-01 (App. Div. 1998)).

The motion judge abused her discretion by failing to give "appropriate deference" to the equitable principles governing GEM's motion and by failing to take into consideration all relevant factors concerning the fatally-flawed abandonment determination on which plaintiff based its case. BV001 REO Blocker, LLC, 467 N.J. Super. at 124 (quoting Davis, 317 N.J. Super. at 100-01); see also S.N., 231 N.J. at 515-16.

Plaintiff has repeatedly argued that any flaws in the abandonment-determination procedure did not matter. But they did matter. As plaintiff's attorney recognized in his certification in opposition to GEM's motion,

14

plaintiff's foreclosure case "was brought pursuant to N.J.S.A 54:5-86(b), since the subject property was abandoned." As counsel stated, that statute "permits a private third-party lienholder to proceed under the expedited in rem procedures usually available to municipalities, provided the lienholder obtains a certification from the public officer that the property is abandoned." Thus, plaintiff's case was premised on the determination that the property was abandoned. But for that determination, plaintiff could not have filed its lawsuit under the expedited in rem procedures. See N.J.S.A. 54:5-86.

The abandonment determination and the process that led to it were rife with error. Irvington failed to give the required statutory notice, either by mail or by publication, to the property's owner of record, which at the time was the LLC. By failing to give the required notice, Irvington deprived the property owner of its right to challenge the inclusion of the property on the abandoned-property list. Unless its inclusion on the abandoned-property list is challenged by the owner, a property is "presumed to be abandoned." N.J.S.A. 55:19-55(e).

The abandoned property certification, with a different signature date than that stated by the notary, was issued based on the incorrect belief that Anamar was the "last registered owner," had been notified the property was on the abandoned-property list, and had not challenged it, leaving in place the

15                                                              A-3296-19

presumption the property had been abandoned. Correctly identifying GEM as the property's titleholder in its complaint, plaintiff knew when it filed the complaint that GEM, not Anamar, owned the property. Nevertheless, to support its assertion that it was entitled to an expedited foreclosure procedure based on the property's abandoned status, plaintiff attached to its complaint a clearly erroneous abandoned property certification, inaccurately identifying Anamar was the "last registered owner."

GEM could fairly argue that its default and the final judgment were, at least, the products of mistake and excusable neglect, and, at worst, the results of misrepresentation, entitling GEM to a vacation of the judgment pursuant to subparts (a) ("mistake, inadvertence, surprise, or excusable neglect") and (c) ("fraud . . ., misrepresentation, or other misconduct of an adverse party") of Rule 4:50-1. But we need not reach those issues because we are convinced that the flawed abandonment-determination procedure and the many other anomalies of this case justify relief from the judgment under subpart (f) of Rule 4:50-1.

Under Rule 4:50-1(f), a movant may request vacation of final judgment for "any other reason justifying relief from the operation of the judgment or order." Subsection (f) provides the basis "for relief in exceptional situations . . . [a]nd in such exceptional cases its boundaries are as expansive as the need

16

to achieve equity and justice." <u>Ct. Inv. Co. v. Perillo</u>, 48 N.J. 334, 341 (1966); <u>see also</u> <u>BV001 REO Blocker, LLC</u>, 467 N.J. Super. at 125. Subsection (f) permits relief "even when a defendant's response or failure to respond to a complaint was found . . . to be inexcusable." <u>LVNV Funding, LLC v. DeAngelo</u>, 464 N.J. Super. 103, 109 (App. Div. 2020). In deciding if relief is warranted under subsection (f), "a court may consider the movant's delay, the justification for its request, and potential prejudice to the responding party." <u>BV001 REO Blocker, LLC</u>, 467 N.J. Super. at 126.

No doubt, the better course for GEM would have been to submit a written request for tax lien information. That fact does not erase Irvington's (i) admission that it provided inaccurate information to Majestic's employee; (ii) admission it failed to disclose the existence of the outstanding 2018 sewer charges; (iii) admission it should not have accepted payment for the 2019 sewer charges until the lien for the 2018 sewer charges was paid in full; and (iv) inexplicable failure to record the tax sale certificate for over four months. Naming Anamar as the "last registered owner," Irvington's Abandoned Property Public Officer clearly based her abandoned property certification on dated, inaccurate information. If she was wrong about the "last registered owner," was she also wrong, as GEM asserts, about no rehabilitation work being done on the

property?  Did she know Irvington had issued building permits regarding the property?  The inconsistency on the abandoned property certification between the date of Philip's signature and the date it was notarized may seem like a minor issue, but it isn't.  If, consistent with the notary's date, Philip signed the abandoned property certification on May 30, 2019, then how could the Special Tax Sale Assignment have been issued to plaintiff on May 21, 2019?

The motion judge's reliance on dicta from Simon v. National Community Bank of New Jersey, 282 N.J. Super. 447 (App. Div. 1995), the only case she cited, was misplaced.  In Simon, unlike this case, we focused on and affirmed on the basis of the application of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, to a cause of action against a township based on its employee's misinformation about tax liens.

Finally, we see no prejudice to plaintiff in reversing the February 21, 2020 order, vacating the November 6, 2019 final judgment, permitting GEM to intervene, and allowing the case to proceed on the merits.

Reversed, vacated, and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION