**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4639-18

CHERRY HILL RETAIL
PARTNERS, LLC,

     Plaintiff-Respondent,

v.

MARINO'S BISTRO TO
GO CHERRY HILL, LLC,
CONRAD BENEDETTO,
and JAMES MARINO,

     Defendants-Appellants.

_____

MARINO'S BISTRO TO
GO CHERRY HILL, LLC,

     Plaintiff-Appellant,

v.

CHERRY HILL RETAIL
PARTNERS, LLC, CHERRY
HILL RETAIL MANAGERS,
LLC, JSM AT CHERRY HILL,
LLC, JACK MORRIS, JOSEPH
MARINO, MMG CHERRY
HILL, LLC, CARMICHAEL

RESTAURANT SERVICES,
LLC, t/a MUSCLE MAKER
GRILL, and MICHAEL
DIPLACIDO, SR.,

     Defendants-Respondents.
_____

     Argued January 13, 2021 – Decided March 16, 2021

     Before Judges Whipple, Rose, and Firko.

     On appeal from the Superior Court of New Jersey, Law
     Division, Camden County, Docket Nos. L-2692-17 and
     L-3355-17.

     Michael R. Hahn argued the cause on behalf of
     appellants (Simeone & Raynor, LLC, attorneys; I.
     Dominic Simeone, of counsel and on the briefs; Bryan
     T. Eggert and Michael R. Hahn, on the briefs).

     Richard D. Wilkinson argued the cause on behalf of
     respondents Cherry Hill Retail Partners, LLC, Cherry
     Hill Retail Managers, LLC, JSM at Cherry Hill, LLC,
     Jack Morris, and Joseph Marino (The Weingarten Law
     Firm, LLC, attorneys; Richard D. Wilkinson, of
     counsel and on the brief; Meir S. Kalish, on the brief).

PER CURIAM

     Defendants Marino's Bistro To Go Cherry Hill, LLC (MBTGCH), Conrad

Benedetto, and James Marino appeal from eight orders entered by the Law

Division: (1) the November 17, 2017 order dismissing counts two through five

of defendants' counterclaim; (2) the January 18, 2018 order entering final

judgment by default against them; (3) the April 26, 2018 order vacating default judgment; (4) the June 8, 2018 order awarding counsel fees to plaintiff; (5) the February 5, 2019 order reopening and extending discovery; (6) the June 5, 2019 order granting plaintiff's motion for partial summary judgment and denying defendants' motion for summary judgment; (7) the June 25, 2019 order entering judgment against defendants; and (8) the August 1, 2019 order awarding counsel fees to plaintiff. For the reasons that follow, we affirm all of the orders, and we exercise our original jurisdiction under Rule 2:10-5 to modify the counsel fee amount set forth in the August 1, 2019 order.

I.

We derive the following facts from the record and view them in the light most favorable to the parties in respect of their summary judgment motions. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

Marino is a chef, restauranteur, and the sole owner of MBTGCH and Marino's Bistro To Go, LLC (MBTG). Benedetto is Marino's father-in-law and an investor in both entities. In late 2014, MBTGCH was looking for a new location and had the opportunity to assume an existing lease in the Market Place at Garden State Park (the Market Place) shopping center. Plaintiff, Cherry Hill

3

Retail Partners, LLC (CHRP), owns and operates the Market Place. Carmichael Restaurant Services, LLC (Carmichael), t/a Muscle Maker Grill (MMG), was the existing leaseholder in the Market Place. Michael DiPlacido, Sr. (DiPlacido, Sr.), is a principal of MMG.[1] DiPlacido, Sr. was also a guarantor of the CHRP to MMG lease.

MBTGCH assumed the existing MMG lease on December 31, 2014. Marino and Benedetto purported to execute a personal guarantee of Tenant's Performance (Guaranty) under the lease. However, as was later discovered, the lease was actually assigned to MBTGCH while the Guaranty was for the obligations of MBTG.

The assumed lease was set to expire on April 30, 2016; however, paragraph four of the assignment extended the term of the lease until April 30, 2021. MBTGCH failed to pay rent in November and December 2016, as well as January and February 2017. On February 2, 2017, plaintiff initiated eviction proceedings against MBTGCH by filing a verified complaint for non-payment of rent in the Special Civil Part. In April 2017, MBTGCH executed a consent

---

[1] Various records and filings contain different spellings. "DiPlacido" and "DePlacido" are used interchangeably. We use "DiPlacido" in this opinion, which is the spelling used by the parties in their briefs.

A-4639-18

order to enter a judgment of possession and agreed to vacate the premises by the end of that month.

On July 5, 2017, plaintiff filed a complaint in the Law Division, docket number L-2692-17, against MBTG, Marino, and Benedetto, alleging breach of contract (count one), estoppel (count two), and breach of the covenant of good faith and fair-dealing (count three), emanating from defendants' breach of the lease and failure to abide by the Guaranty. Plaintiff sought compensatory and statutory damages as well as counsel fees. Defendants answered plaintiff's complaint on August 23, 2017, and contended they were not liable under the personal guarantee because the tenant's name identified in the Guaranty was MBTG, while the assignment listed the tenant as MBTGCH. Defendants also filed a counterclaim alleging that plaintiff's complaint constituted frivolous litigation because the drafting error rendered the contract nonexistent.

On August 25, 2017, defendants filed their own complaint in the Law Division under docket number L-3355-17 against plaintiff; Cherry Hill Retail Managers, LLC; JSM at Cherry Hill; Jack Morris and Joseph Marino who are related to plaintiff (the "Related Entities"); Carmichael Restaurant Services, LLC t/a Muscle Maker Grill; MMG Cherry Hill, LLC; and Michael DiPlacido, Sr. The eleven-count complaint alleged: bad faith and frivolous litigation (count

one); breach of contract (count two); fraud (count three); fraud in the inducement (count four); conversion (count five); breach of fiduciary duty (count six); unjust enrichment (count seven); conspiracy (count eight); breach of the covenant of good faith and fair dealing (count nine); negligent misrepresentation (count ten); and violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -226 (count eleven).

On August 30, 2017, plaintiff filed a motion for leave to file and serve an amended complaint to assert reformation claims based on mutual mistake, or in the alternative, unilateral mistake based on fraud. Thereafter, on September 13, 2017, plaintiff filed a motion to dismiss defendants' counterclaim pleading frivolous litigation for failure to state a claim, pursuant to Rule 4:6-2(e). On September 29, 2017, Judge Francisco Dominguez granted plaintiff's motion to dismiss defendants' counterclaim alleging frivolous litigation for failure to state a claim, noting that the claim required the filing party to be the prevailing party, which had not yet been ascertained.

On October 10, 2017, plaintiff filed a motion to dismiss defendants' complaint under docket number L-3355-17 for failure to state a claim upon which relief can be granted. In the alternative, plaintiff requested the matters be consolidated to address any remaining claims. On October 13, 2017, Judge

6

Dominguez granted plaintiff's motion for leave to file and serve an amended complaint to assert reformation claims based on either mutual mistake, a scrivener's error, or unilateral mistake based on fraud. Defendants moved to dismiss plaintiff's amended complaint for failure to state a cognizable claim, which was denied, and plaintiff subsequently filed same on October 17, 2017.

On November 17, 2017, Judge Steven J. Polansky heard oral argument on plaintiff's motion to dismiss defendants' complaint under docket number L-3355-17, or in the alternative to consolidate the matter with L-2692-17. Judge Polansky dismissed count one, frivolous litigation, as premature, finding that defendants were collaterally estopped from asserting a claim for frivolous litigation as a result of Judge Dominguez's September 29, 2017 dismissal of the frivolous litigation counterclaim in the related matter.

Judge Polansky also dismissed count six, breach of fiduciary duty, with prejudice, finding no fiduciary duty existed as a matter of law. Counts two through five, and seven through eleven were dismissed without prejudice, and the judge granted defendants' motion to amend the pleading within twenty days. Finally, the judge consolidated the matters under docket number L-2692-17 for the purpose of conducting discovery and for trial.

7

Defendants did not avail themselves of the twenty days' leave to amend their complaint granted by Judge Polansky in his November 17, 2017 order. Additionally, defendants failed to file an answer or otherwise move as to plaintiff's amended complaint. Consequently, plaintiff moved for the entry of default against all defendants as to its amended complaint, which was granted and entered on December 7, 2017.

On January 8, 2018, plaintiff applied to the clerk of the court for the entry of final judgment by default. Pursuant to Rule 4:43-2(a), the application was made without a request for a proof hearing because liquidated damages were sought. On January 18, 2018, judgment by default was entered by the clerk of the court in the amount requested by plaintiff.

On February 14, 2018, defendants filed a motion to vacate the default judgment, arguing excusable neglect in failing to answer the amended complaint. Plaintiff filed opposition to the motion on February 22, 2018. On March 2, 2018, defendants' motion was denied on procedural grounds. On March 9, 2018, defendants moved again to vacate the default judgment, arguing excusable neglect in failing to answer plaintiff's amended complaint. Plaintiff filed opposition to the motion on March 20, 2018.

A-4639-18

On April 13, 2018, in an oral decision following argument, Judge Dominguez granted defendants' motion to vacate the default judgment, but predicated the relief on two conditions: (1) an award of attorneys' fees to plaintiff; and (2) a bar to defendants filing any additional counterclaims, thus preventing them from refiling the claims previously asserted under docket number L-3355-17, where they chose not to file an amended complaint despite Judge Polansky's granting of twenty days' leave to amend. Judge Dominguez's April 13, 2018 oral decision was memorialized in a written order on April 26, 2018.

Plaintiff subsequently filed an affidavit of services seeking $15,000 for counsel fees incurred in obtaining the judgment by default and opposing defendants' motion to vacate the default judgment. At the June 8, 2018 hearing, Judge Dominguez ordered defendants to pay $2500 to plaintiff for counsel fees incurred in opposing defendants' motion to vacate default judgment. The judge also granted plaintiff's motion to compel outstanding discovery, which was served in November 2017. A memorializing order was entered that day.

Because defendants were recalcitrant and failed to comply with the June 8, 2018 order with respect to counsel fees, plaintiff filed a motion to enforce litigant's rights. On August 17, 2018, Judge Dominguez ordered defendants to

A-4639-18

be held in contempt for failing to pay the $2500 counsel fee to plaintiff. In addition, the judge entered judgment in the sum of $2500 against Benedetto personally.

The record shows that discovery was a laborious and drawn-out process. Consequently, plaintiff moved to compel the depositions of Marino and Benedetto. On November 30, 2018, Judge Thomas T. Booth, Jr. denied plaintiff's motion. On December 26, 2018, plaintiff moved to extend the discovery end date, which was denied by Judge Booth on January 11, 2019. Thereafter, plaintiff filed a motion for reconsideration, which was granted in part. On February 15, 2019, Judge Booth granted plaintiff's motion to reopen and extend the discovery period for the sole purpose of deposing Marino and Benedetto.

Marino and Benedetto refused to appear for their depositions. On March 15, 2019, plaintiff moved to compel Marino and Benedetto to appear for their depositions and hold them in contempt of the February 15, 2019 order. On April 26, 2019, Judge Booth ordered Marino and Benedetto to appear for their depositions on May 3, 2019, or be faced with sanctions if they failed to comply. Ultimately, Marino and Benedetto were deposed. Plaintiff claims they recalled "virtually nothing" about the negotiation of the Assignment and Guaranty.

At the close of discovery, defendants filed a motion for summary judgment arguing the Guaranty had to be enforced strictly as written since it was clear and unambiguous, and liability against MBTGCH was legally impossible. Marino and Benedetto did not submit a responding statement either admitting or disputing each of the facts set forth in defendants' motion as required by Rule 4:46-2(b). Plaintiff filed a cross-motion for summary judgment on the issue of liability and sought reformation of the Guaranty. In support of its cross-motion, plaintiff submitted a certification from Charles Sheard, the attorney who represented plaintiff in the transaction and the draftsperson of the Assignment and Guaranty.

In his certification, Sheard stated he was informed by plaintiff's leasing agent, John Birnbaum, that MBTGCH was going to take over an existing lease between plaintiff and MMG. Sheard also certified that an email from Marino, or someone writing on his behalf, advised that the tenant was going to be MBTG, and he was never told that the name of the tenant/assignee would change. All of the drafts of Sheard's documents identified the tenant/assignee as MBTG and were sent to defendants or their counsel. None of the versions of Sheard's documents ever identified the tenant/assignee as MBTGCH. Sheard certified he did not see the documents again until after they were signed and only saw the

11

Assignment and not the Guaranty, and therefore, he did not notice the discrepancy. Additionally, Sheard highlighted that paragraph nine of the Assignment cross-references the Guaranty and therefore, conditioned plaintiff's consent to the Assignment upon Marino and Benedetto signing as Guarantors of the new tenant's obligations. Defendants did not challenge Sheard's certification.

On June 5, 2019, Judge Booth heard oral argument on defendants' motion for summary judgment and plaintiff's cross-motion for partial summary judgment and reformation. The record shows plaintiff clarified it was only seeking relief at this juncture on its theory of reformation and withdrew its claims based on fraud and unilateral mistake. In his oral opinion, the judge denied defendants' motion for summary judgment and granted plaintiff's motion for partial summary judgment on the issue of personal liability against Marino and Benedetto.

Judge Booth reasoned:

> Here, I find that the—lack of any other possible explanation for why Benedetto and Marino would have executed a [G]uarant[y], other than they were executing a [G]uarant[y] of the [A]ssignment between the plaintiff and [MBTG], there's—there's—is dispositive of the issue. So, it's—it's the lack of any evidence before the [c]ourt of any other agreement that would have been guaranteed.

12

Moreover, one of two things happened: Either the defendants or somebody altered the [A]ssignment purposefully knowing that the [G]uarant[y] guaranteed a different—the payments of a different entity or it was a mistake. But, either way, reformation is available and is the appropriate remedy here because if it was purposeful, then that means that it was a unilateral mistake with unconscionable conduct or fraud on behalf of the defendants. Or if it wasn't that, then it was a mutual mistake to not have the—the documents, the assignment and the guarantee, match up perfectly.

So, for those reasons, I am going to deny the motion for summary judgment of the defendants, Benedetto and Marino, and I'm granting the cross-motion for summary judgment on reformation to the plaintiff . . . .

At the onset of trial on June 11, 2019, plaintiff moved to amend its complaint to substitute MBTGCH in place of MBTG as the tenant-defendant in accordance with the judge's June 5, 2019 decision. Plaintiff's motion to amend was granted. Judge Booth concluded that reformation was necessary, and therefore, his order could not have applied to MBTG. A memorializing order was entered that day, and trial was scheduled for June 11, 2019, on the issue of damages only as to MBTGCH, Marino, and Benedetto.

At trial, plaintiff presented testimony from three witnesses: (1) Michael McDermott, the commercial leasing manager for the Market Place, regarding plaintiff's efforts to mitigate and re-let the premises; (2) Andrea Cintron, a

13

commercial lease accountant, as to the issue of damages pre- and post-dispossession; and (3) Greg Bohn, as to the issue of damages to be assessed relative to defendants' vacating the premises. Defendants called no witnesses and presented no evidence. After considering the parties' proposed findings of fact and conclusions of law, Judge Booth rendered a comprehensive oral decision on June 13, 2019.

The judge found plaintiff's witnesses to be "credible" and their testimony was "worthy of belief." Specifically, the judge found plaintiff "engaged in multiple" efforts to mitigate its damages and concluded "the proper method of calculating plaintiff's damages is the period from April 30th, 2017 when [it] regained possession of the property following the defendants' default to December 7, 2018, the day before the new tenant's rent commencement date[,] which was December 8, 2018 due to its build-out period." The judge awarded $278,002.07 in damages, inclusive of pre-judgment interest, and noted "all three defendants are liable" for those damages. In addition, Judge Booth indicated he would consider an application for counsel fees for plaintiff's counsel. On June 25, 2019, final judgment was entered against MBTGCH, Marino, and Benedetto, jointly and severally, in the sum of $278,002.07.

In accordance with the judge's instruction, plaintiff submitted an affidavit of services seeking $94,216 in fees and costs, which was opposed by defendants. On August 1, 2019, the judge entered an order granting plaintiff $93,556 in fees and costs. This appeal ensued.

On appeal, MBTGCH, Benedetto, and Marino argue the judges erred: (1) in finding MBTGCH failed to state a claim for relief under Rule 4:6-2(e) with respect to counts two, three, four, five, seven, eight, nine, ten, and eleven of their complaint filed under docket number L-3355-17; (2) by failing to establish just terms for granting relief from the default judgment entered on January 11, 2018, by the clerk of the court under Rule 4:50-1; (3) in denying Benedetto and Marino's motion for summary judgment and granting plaintiff's cross-motion for partial summary judgment; (4) by finding that the Guaranty was subject to reformation; (5) by awarding judgment to plaintiff without evidence being presented on every element of its claim; (6) by permitting plaintiff to amend its complaint on the day of trial to include MBTGCH as a party; (7) in finding plaintiff mitigated its losses and awarding damages from May 2017 to September 2018; (8) by awarding pre-judgment interest of three and one-half percent to plaintiff pursuant to Rule 4:42-11; and (9) by awarding an unreasonable amount of attorney's fees to plaintiff. For the first time on appeal,

MBTGCH, Benedetto, and Marino also request that we remand the matter to determine if it was proper to proceed without the inclusion of a necessary party, that is Michael DiPlacido, Sr.

II.

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995). A trial court's interpretation of the law is generally reviewed de novo. Occhifinto v. Olivo Constr. Co. LLC, 221 N.J. 443, 453 (2015).

An appellate court reviews motions to dismiss under a de novo standard. Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016). Specifically, in reviewing a trial court's dismissal of a complaint pursuant to Rule 4:6-2(e), an appellate court applies a plenary standard of review. Stop & Shop Supermarket Co., LLC v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017). "An appellate court reviews de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e)." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019).

A few days after defendants' answer was filed under docket number L-2692-17, they filed a separate action, L-3355-17, against CHRP, its alleged

members, the ostensible individual owners of these entities, and the parties who purportedly assigned the lease to MBTGCH (MMG, Carmichael, DiPlacido, Sr., and Michael DiPlacido, Jr.). In their complaint, defendants asserted claims for: (1) bad faith and frivolous litigation (count one); (2) breach of contract (count two); (3) fraud (count three); (4) fraud in the inducement (count four); (5) intentional and malicious interference and disruption of business operations (count five); (6) breach of fiduciary duty (count six); (7) unjust enrichment (count seven); (8) conspiracy (count eight); (9) bad faith (count nine); (10) negligent misrepresentation (count ten); and (11) consumer fraud and deceptive business practice (count eleven).[2] Plaintiff moved to dismiss all of defendants' claims, and to consolidate any remaining claims under matter L-2692-17.

In granting a motion to vacate, trial courts are to exercise their sound discretion. Reg'l Constr. Corp. v. Ray, 364 N.J. Super. 534, 541 (App. Div. 2003) (citing Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). Absent an abuse of discretion, their decisions will not be disturbed by a reviewing court. Ibid. We conclude that Judge Polansky properly dismissed defendants' claims two through five, and seven through eleven, without prejudice, for failure to

---

[2] A second "count eleven" was pled in defendants' complaint against potential fictitious entities and individuals, which is not germane to our opinion.

state a claim. Judge Polansky aptly noted that a number of the claims made by defendants in their complaint failed to meet the heightened pleading requirements necessary to make a claim because they failed to identify the specific party the claims were made against. Specifically, counts three, four, eight, ten, and eleven were subject to statutorily proscribed heightened pleading requirements, which defendants failed to satisfy. The remaining claims also failed to plead with specificity although no statutorily proscribed heightened standard applied.

Judge Polansky specifically addressed each of defendants' eleven claims against plaintiff and made thorough findings. He concluded that the claims were legally deficient because they did not provide sufficient notice to the party the claim was asserted against. Our review of the record from oral argument reveals Benedetto argued the motion on behalf of defendants and did not answer the majority of the judge's questions, but instead, he merely referred to vague theories based on fraud being made against plaintiff. Therefore, we find no error in Judge Polansky's decision.

Moreover, even if the judge erred in dismissing counts two through five and seven through eleven, it was harmless error because the dismissal was without prejudice and with twenty-days leave to amend granted. Rule 2:10-2

states "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." See generally Willner v. Vertical Reality, Inc., 235 N.J. 65, 79-81 (2018) (applying harmless error in a civil case). Defendants chose not to take advantage of the opportunity to cure any defects in their pleadings and failed to present any evidence of the affirmative defenses they raised, fraud and unclean hands, at trial. Therefore, we see no basis to disturb Judge Polansky's decision.

III.

We next address defendants' argument that Judge Dominguez abused his discretion by imposing terms for vacating the final judgment by default. The trial court has discretion to impose terms in connection with vacating a default judgment. ATFH Real Prop. v. Winberry Realty, 417 N.J. Super. 518, 526-529 (App. Div. 2010). Rule 4:50-1 authorizes the trial court to condition an order to vacate default judgment "upon such terms as are just." However, "[t]he imposition of terms pursuant to [Rule] 4:50-1, while discretionary, should be judged against the relative strength or weakness of the prejudice suffered by plaintiff." Reg'l Constr. Corp. v. Ray, 364 N.J. Super. 534, 543 (App. Div. 2003). Terms should not be used to punish or sanction the party seeking relief. Ibid.

With respect to awarding counsel fees as a condition, we have stated that a defendant seeking to vacate default may be required to reimburse the plaintiff for the fees and costs "in pursuit of the default judgment or in responding to the motion to vacate." Ibid. Here, Judge Dominguez only awarded plaintiff $2500 in fees of the requested $15,000 amount. And, the judge highlighted in his order that allowing defendants to file a counterclaim would reward their inaction in the matter. There was clear authority for the judge to sanction defendants in the manner prescribed, and we discern no abuse of discretion.

IV.

Defendants also contend Judge Booth erred in denying Benedetto and Marino's motion for summary judgment and granting plaintiff's cross-motion for partial summary judgment. Again, we disagree.

In ruling on a summary judgment motion, a trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). An appellate court reviews a grant or denial of summary judgment de novo, using the same standard as the trial court. N.J. Transit Corp. v. Certain Underwriters

20

at Lloyd's London, 461 N.J. Super. 440, 452 (App. Div. 2019). Thus, we must determine whether a genuine issue of material fact is present and, if not, evaluate whether the trial court's ruling on the law was correct. See Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167-69 (App. Div. 1998). We also view the evidence in the light most favorable to the non-moving party. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012).

Reformation of a contract is justified only where there has been "mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other." St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 577 (1982). "The doctrine of mutual mistake applies when a 'mistake was mutual in that both parties were laboring under the same misapprehension as to [a] particular, essential fact.'" Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 608 (1989) (alteration in original) (quoting Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 446 (App. Div. 1979)). The party seeking reformation must present "clear and convincing proof that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be." Cent. State Bank v. Hudik-Ross Co., 164 N.J. Super. 317, 323 (App. Div. 1978) (citation omitted).

A-4639-18

Moreover, reformation of a contract is not a modification, but rather a recognition that the writing failed to accurately convey the intent of the parties. Aarvig v. Aarvig, 248 N.J. Super. 181, 186 (Ch. Div. 1991). Here, the record showed there was clear and convincing proof that Sheard, the scrivener of the Assignment and Guaranty, erred in drafting the instruments in a manner that manifested the intention of the parties. See St. Pius X House of Retreats, 88 N.J. at 581. Sheard's certification and testimony detailed how the discrepancy between the name of the tenant listed on the Assignment and Guaranty occurred. Defendants did not present any contradictory facts or testimony to proffer that the Guaranty was improperly drafted.

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion[.]" Puder v. Buechel, 183 N.J. 428, 440-41 (2005). Applying these standards, we discern no reason to reverse the granting of partial summary judgment to plaintiff on the issue of reformation.

Our careful review of the record shows the judge reviewed the evidence in a light most favorable to defendants relative to plaintiff's cross-motion for partial summary judgment. Judge Booth conducted oral argument and placed his findings of fact and conclusions of law on the record. Based upon our de novo review, we conclude defendants presented no evidence to refute plaintiff's proofs on mutual mistake. Sheard credibly certified that he never received a signed copy of the Guaranty and thus was unable to identify the discrepancy between the named entity on the Assignment and the Guaranty. Paragraph nine of the Assignment clearly provides that plaintiff's consent to the Assignment was conditioned on Marino and Benedetto's execution of personal guarantees. Indeed, the parties agreed to "execute[] and deliver[] to [l]andlord a [G]uaranty of [t]enant's obligations under the lease." We conclude reformation was both appropriate and warranted based upon the circumstances and undisputed evidence.

V.

In a two-sentence argument in their brief, defendants assert that plaintiff failed to provide evidence of each element of its claim. We disagree and add the following brief comments.

At trial, Judge Booth aptly noted "[e]veryone agrees that there was a default on the [l]ease." Moreover, defendants voluntarily entered into a consent judgment for possession of the premises and admitted they were in default. The judge heard from witnesses and considered the evidence. Consequently, the judge adopted the proofs on damages submitted by plaintiff and entered judgment in its favor as described earlier. We see no shortcomings with the presentation or quality of plaintiff's proofs and see no reason to intervene in the judge's disposition of the issues. There was no evidence to the contrary. So long as the judge's findings were based on evidence in the record—our obligation is to defer to those findings. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974).

VI.

Defendants next argue that Judge Booth erred by permitting plaintiff to amend its complaint on the day of trial to include MBTGCH as a party. Our Court has "made clear that 'Rule 4:9-1 requires that motions for leave to amend be granted liberally' and that 'the granting of a motion to file an amended complaint always rests in the court's sound discretion.'" Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456-57 (1998)). Although motions to

24

amend "are ordinarily afforded liberal treatment, <u>the factual situation in each case must guide the court's discretion</u>, particularly where the motion is to add new claims or new parties late in the litigation." <u>Bonczek v. Carter-Wallace, Inc.</u>, 304 N.J. Super. 593, 602 (App. Div. 1997) (emphasis added).

Here, the substitution of MBTGCH for MBTG was little more than a name change and simply fulfilled the judge's granting of partial summary judgment on the issue of reformation to plaintiff. Saliently, defendants conceded on the record "[w]e agree with Your Honor that there would be no prejudice in simply substituting the name [MBTGCH for MBTG] . . . ." Therefore, we conclude the judge did not abuse his discretion in allowing plaintiff to substitute MBTGCH for MBTG on the day of trial. <u>See</u> <u>Bonczek</u>, 304 N.J. Super. at 602.

VII.

Defendants also argue that Judge Booth erred in finding plaintiff mitigated its damages. We reject this argument.

The trial judge's findings on the issue of mitigation of damages must be upheld if supported by "sufficient, credible evidence." <u>State v. Ernst & Young, LLP</u>, 386 N.J. Super. 600, 616 (App. Div. 2006). Generally, the "burden of proving facts in mitigation of damages rest[s] upon the party breaching the contract." <u>Cohen v. Radio-Elecs. Officers Union, Dist. 3</u>, 275 N.J. Super. 241,

262 (App. Div. 1994) (citing Roselle v. La Fera Contracting Co., 18 N.J. Super. 19, 28 (Ch. Div. 1952)). However, landlords generally have the burden of proving that they made reasonable efforts to re-let their premises where a tenant breaches a lease. Sommer v. Kridel, 74 N.J. 446, 458-59 (1977); see also McGuire v. Jersey City, 125 N.J. 310 (1991) (extending residential landlord's duty to mitigate to commercial landlords). Courts generally find efforts to re-let reasonable where the landlord takes some affirmative action to find a new tenant. Sommer, 74 N.J. 458-59 (listing potential efforts such as advertising in publications, showing the premises to other prospective tenants, employing a realtor, and more).

McDermott testified as to plaintiff's efforts to re-let the premises following defendants' default and eviction up to the time it signed a lease with Playa Bowls in September 2018. The judge found McDermott was credible when he testified he was personally involved with finding a new tenant after he learned the space was vacant; reached out to the broker community; distributed marketing brochures at events held at the International Convention of Shopping Centers and electronically; made telephone calls; and sent emails to brokers and on CoStar, an online platform for commercial real estate space. Although Playa Bowls was first shown the property in May 2017, it did not sign a lease until

26

September 2018 because Playa Bowls decided to switch from opening a "corporate store" to a "franchised store" at the location. In December 2018, Playa Bowls began paying rent.

According to McDermott's unrefuted testimony, he continued to market the property until Playa Bowls was ready to commit. The judge considered defendants' argument that nineteen months of rental income—$158,647.04—should be subtracted from plaintiff's damages claim because Playa Bowls was introduced to the premises in May 2017. The record reveals the judge properly accounted for this argument and disavowed it. The judge's decision was based upon substantial, credible evidence in the record, and we see no reason to disturb his determination.

## VIII.

Next, defendants contend that Judge Booth abused his discretion in awarding pre-judgment interest under <u>Rule</u> 4:42-11 at three and one-half percent. At trial, Cintron conceded during her testimony that the interest figures set forth in the Statement of Amount Due she prepared were not calculated correctly as per Section 25.11 of the lease. Defendants assert that the judge could only award post-judgment interest pursuant to <u>Rule</u> 4:42-11, and not pre-judgment interest.

Our Court has made quite clear that "[a]lthough prejudgment interest in a tort action is expressly governed by [Rule] 4:42-11(b), 'the award of prejudgment interest on contract and equitable claims is based on equitable principles.'" Litton Indust. v. IMO Indus., 200 N.J. 372, 390 (2009) (quoting Cnty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006)). Further, the "award of prejudgment interest in a contract case is within the sound discretion of the trial court." Ibid. "Similarly, the rate at which prejudgment interest is calculated is within the discretion of the court." Ibid. (citing Musto v. Vidas, 333 N.J. Super. 52, 74-75 (App. Div. 2000)). "Unless the allowance of prejudgment interest 'represents a manifest denial of justice, an appellate court should not interfere.'" Ibid. (quoting First Union Nat'l, 186 N.J. at 61).

The judge weighed and considered the testimony and resolved the pending issue. The Guaranty provided that "If Guarantor fails to pay any amount payable under this Guaranty when due, interest on such amount shall accrue at the highest legal rate chargeable to Guarantor in the State of New Jersey." The judge's decision is entitled to deference. Having undertaken a thorough analysis

of the record, we conclude the judge's decision to award pre-judgment interest at three and one-half percent was not an abuse of discretion.[3]

## IX.

Defendants also argue Judge Booth erred in awarding counsel fees to plaintiff, that the award was unreasonable, and an abuse of discretion. However, the parties agree there is no rule against contracting to pay another party's counsel fees.

"[Rule 4:42-9] does not preclude a party from agreeing by contract to pay attorneys' fees." Kellam Assocs. v. Angel Projects, LLC, 357 N.J. Super. 132, 138 (App. Div. 2003). Our Court has noted that "a party may agree by contract to pay attorneys' fees." N. Bergen Rex Transp. v. Trailer Leasing Co., 158 N.J. 561, 570 (1999). Awards of attorneys' fees are only disturbed upon a clear abuse of discretion. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001).

Here, both the lease and Guaranty contained provisions making defendants responsible for plaintiff's counsel fees in the event of a default under

---

[3] We have previously noted that absent unusual circumstances the appropriate rate of prejudgment interest is the rate of return earned by the State Treasurer, as contemplated by Rule 4:42-11(a)(ii). Benevenga v. Digregorio, 325 N.J. Super. 27, 34-35 (App. Div. 1999). As of January 2019, that rate was one and one-half percent, see Publisher's Note to Rule 4:42-11, plus two percent per annum, Rules 4:42-11(b) and 4:42-11(a)(iii), for a total interest rate of three and one-half percent in this matter. See R. 4:42-11.

the terms of the lease. Section 15.2(b) of the lease provides for "Default Costs" and Section 25.9 states reasonable attorneys' fees shall be paid to the prevailing party by the losing party. Moreover, the Guaranty shifted the responsibility of payment of counsel fees to defendants holding them liable for "[l]andlord's legal expenses and reasonable attorneys' fees and disbursement" arising from a default by the tenant. Therefore, the judge did not abuse his discretion in awarding counsel fees to plaintiff.

We also reject defendants' argument that the judge erred in awarding counsel fees without conducting a hearing. Our Court has noted that "appellate courts will not disturb the decision to deny a plenary hearing unless there is a 'clear abuse of discretion.'" Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 25 (2004) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Further, our Court has emphasized that "a plenary hearing should be conducted only when the certifications of counsel raise material factual disputes that can be resolved solely by the taking of testimony. We expect that such hearings will be a rare, not routine, occurrence." Id. at 24 (emphasis added).

In the matter under review, plaintiff's counsel submitted a detailed affidavit of service dating back to 2017 in support of the counsel fee application to Judge Booth. The affidavit set forth who performed the work, the hourly rate

30                                                                    A-4639-18

charged, the date the service was rendered, and a description of the professional work performed. Defendants were provided the opportunity to file opposition. Therefore, we conclude there was no abuse of discretion in Judge Booth denying a plenary hearing on the counsel fee issue.

During appellate oral argument, plaintiff's counsel stipulated there was a mathematical error and that $15,000 should be deducted from the $93,566 counsel fee award for an adjusted award of $78,566. Because we have the necessary information to determine the reasonable attorney fees, we exercise original jurisdiction in this matter, Rule 2:10-5, and determine the amount payable by defendants to counsel for plaintiff following trial to be $78,566. We remand to the trial judge to enter an order accordingly. We otherwise affirm Judge Booth's award of counsel fees.

Similarly, we find no abuse of discretion in Judge Dominguez's order awarding $2500 in counsel fees to plaintiff in connection with defendants' motion to vacate the default judgment. Certainly, the judge had the ability to award counsel fees as a condition to vacating default judgment and only awarded $2500 of the $15,000 requested by plaintiff. Given our opinion, Judge Booth was well within his discretion in considering plaintiff's request for the balance

of the fees, $12,500, previously submitted to Judge Dominguez, and we see no reason to reverse.

X.

Finally, for the first time on appeal, defendants contend that DiPlacido, Sr., a principal of the prior tenant MMG, and a guarantor of plaintiff on the MMG lease, was a necessary party to these proceedings. Defendants assert that the trial judges should have sua sponte considered the necessity of including DiPlacido, Sr. as a party before allowing the matters to proceed.

We generally decline to address issues not presented to the trial court, unless the issues pertain to the trial court's jurisdiction or "matters of great public interest." State v. Robinson, 200 N.J. 1, 20-22 (2009); see also State v. Arthur, 184 N.J. 307, 327 (2005); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Nonetheless, we add the following brief remarks.

The Guaranty signed by Marino and Benedetto provided in relevant part:

> This Guaranty is an absolute and unconditional guaranty of payment (and not of collection) and of performance. The liability of [g]uarantor is co-extensive with that of [t]enant and any other guarantor of [t]enant's obligations under the [l]ease and this Guaranty shall be enforceable against [g]uarantor without the necessity of any suit or proceeding on [l]andlord's part of any kind or nature whatsoever against [t]enant or any other guarantor and without and without the necessity of any notice of nonpayment,

A-4639-18

nonperformance or nonobservance or of any notice of acceptance of this [G]uaranty or of any notice or demand to which [g]uarantor might otherwise be entitled, all of which [g]uarantor hereby expressly waives, provided that notice shall have been given to [t]enant (but only if and to the extent required by the [l]ease).

[(Emphasis added).]

There is no question that Marino and Benedetto were on notice and agreed to be jointly and severally liable to plaintiff in conjunction with all other guarantors by the plain terms of this provision. Under the terms of the Guaranty, plaintiff clearly had no obligation to seek contribution from DiPlacido, Sr. either before or concurrently with any action seeking payment from Marino and Benedetto.

When evaluating whether a party is necessary, the defendants do not dictate who should or must be added to the litigation, necessary parties are determined from the perspective of the absent party, or the plaintiff. See, e.g, LaMar-Gate, Inc. v. Spitz, 252 N.J. Super. 303 (App. Div. 1991) (from absent party's standpoint); Schaeffer v. Strelecki, 107 N.J. Super. 7 (App. Div. 1969) (from plaintiff's standpoint). Because plaintiff chose to file a complaint against Marino and Benedetto, DiPlacido, Sr.'s interests were not being "necessarily affected." See Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 394 N.J.

Super. 71, 82 (App. Div. 2007) (quoting <u>Jennings v. M&M Transp. Co.</u>, 104 N.J. Super. 265, 272 (Ch. Div. 1969)). Therefore, we reject defendants' argument that DiPlacido, Sr. should have sua sponte been made a necessary party by the judge.

To the extent we have not specifically addressed some of defendants' contentions, it is because we find they have insufficient merit to warrant further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4639-18